FILED

2012 Dec-07  PM 12:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY; and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | LEAD CASE CIVIL ACTION NO. |
| v. | ) ) | CV-11-RRA-01721-W |
| GRACIE DAVIS, as personal representative of the estate of GREGORY D. CHANEY; MARLA SARTAIN CASTILLO, as personal representative of the estate of SERGIO CASTILLO RIVAS; DANIEL PELAYO SILVERIO; and CORNELIUS DANCY, | ) ) ) ) ) ) ) ) | |

_____

| | | |
|---|---|---|
| The Estate of SERGIO CASTILLO RIVAS, by and through MARLA SARTAIN CASTILLO, personal representative and administratrix of The Estate of Sergio Rivas, deceased; | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | MEMBER CASE CIVIL ACTION NO. CV-11-RRA-2214-W |
| v. | ) ) | |
| KATHY CREPPEL GALLEGOS, An individual; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; THE CHARTER OAK FIRE INSURANCE COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

This is a consolidated civil action. Before the court is the plaintiff's motion to bifurcate and remand (doc. 41, in CV-11-RRA-1721; doc. 36, in CV-11-RRA-2214); the plaintiff's amended motion to bifurcate and remand (doc. 42, in CV-11-RRA-1721; doc. 38, in CV-11-RRA-2214); the plaintiff's supplemental and renewed motion to remand (doc. 44, in CV-11-RRA-1721; doc. 51, in CV-11-RRA-2214); and the plaintiff's supplemental motion to remand (doc. 79 in CV-11-RRA-1721; doc. 109, in CV-11-RRA-2214).

## FACTS AND PROCEDURAL HISTORY

On February 22, 2011, a car driven by defendant Kathy Creppel Gallegos collided with a car occupied by Sergio Castillo Rivas, Gregory D. Chaney, Daniel Pelayo Silverio, and Cornelius Dancy. At the time of the accident, Rivas, Cheney, Silverio, and Dancy all worked for Superior Maintenance Company ("Superior") and were riding in a company vehicle. The vehicle was covered by a commercial insurance policy issued by the Charter Oak Fire Insurance Company ("Charter") and a commercial excess liability (umbrella) policy issued by Travelers Property Casualty Company of America ("Travelers").

After the accident, these two lawsuits were filed. The first to appear in this court was *The Charter Oak Fire Insurance Company, et al. v. Davis, et al.*, CV-11-RRA-1721-W, filed on May 24, 2011. (Doc. 1, in CV-11-RRA-1721-W.) That case is an interpleader and declaratory judgment action originally brought by Charter and Travelers against Gracie Davis as personal representative of the estate of Gregory D. Chaney; Marla Sartain Castillo as personal representative of the estate of Sergio Castillo Rivas; Daniel Silverio; and Cornelius

Dancy. The complaint claims that Gallegos's insurance limits are insufficient to cover the injuries to the passengers of the vehicle with which Gallego collided. It notes that the defendants are seeking underinsured motorist coverage from Charter and/or Travelers. Charter deposited $3,000,000.00 with the court, which amount represents underinsured motorist benefits, while Travelers denies that its policy with Superior provides coverage. All occupants of the vehicle which Gallegos hit are potential claimants to the insurance proceeds at issue.

*The Estate of Sergio Castillo Rivas v. Gallegos, et al.*, CV-11-RRA-2214-W was the second action to arrive in this court.  It was actually filed first, in Tuscaloosa County Circuit Court, on May 23, 2011  (doc. 1-1, p. 3, in CV-11-RRA-2214-W), and was removed to this court on June 23, 2011 on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[1]  The case was brought by Marla Sartain Castillo as personal representative of the estate  of Sergio Rivas, deceased, against Gallegos, Travelers, and Charter.  The original complaint alleges counts of negligence and/or wantonness (Count One), wrongful death (Count Two) against Gallegos, and for payment of uninsured/under-insured motorist coverage benefits against

---

[1]The Eleventh Circuit has stated:

> A defendant may remove an action to a district court that would have original jurisdiction if complete diversity between the parties exists and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Further, the removal statute forbids removal "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

*City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 n. 1 (11th Cir. 2012).

Charter and/or Travelers (Count Three). It also seeks a judgment declaring the extent of insurance coverage available to the plaintiff (Count Four).

On June 28, 2011, the plaintiff filed a motion to remand in CV-11-RRA-2214-W, claiming that Gallegos and the plaintiff were both Alabama citizens and, therefore, complete diversity does not exist.  (Doc. 5.)[2]  The court noted that the complaint alleged no citizenship for the plaintiff and that the defendants had provided evidence of the following:

• Gallegos' Louisiana driver's license.

• Gallegos' automobile, which was involved in the accident made the basis of the lawsuit, is registered in Louisiana.

• The address listed for the registration of the vehicle is in Hessmer, Louisiana.

• The public records available on Westlaw show that the Hessmer, Louisiana address, to which Plaintiff has issued her alias summons, is a current address for Kathy Gallegos.

• Plaintiff's counsel is using this same address in Hessmer, Louisiana to serve Gallegos with the Complaint.

• Gallegos' telephone number is a Louisiana telephone number.

• The address listed on the declarations page of Gallegos's personal automobile insurance policy provided by Direct General Insurance Company of Louisiana is a Louisiana address.

• On March 10, 2011, Direct General Insurance of Louisiana informed Plaintiff's counsel that Gallegos was a resident of Louisiana.

(Doc. 14, p. 4.) The plaintiff disputed none of those facts, and did not dispute that Gallegos was a citizen of Louisiana.  Instead, the plaintiff argued, without support, only that evidence outside the pleadings could not be used to establish citizenship. The court determined that at the time of removal Gallegos was domiciled in, and therefore a citizen of Louisiana, and

---

[2]See note 1.

4

that there was complete diversity.  It was recommended that the motion to remand be denied.  No objection was filed to that recommendation.  On August 11, 2011, Judge Bowdre accepted the recommendation and denied the motion.  (Doc. 16.)

On August 17, 2011, an order consolidating these cases was entered. (Doc. 30, in CV-11-RRA-1721-W.)[3]  On October 3, 2011, the plaintiff filed an amended complaint in CV-11-RRA-2214-W.  (Doc. 28.)  On October 13, 2011, Travelers and Charter Oak moved the strike the amended complaint in part because the plaintiff filed it without first seeking leave of court or written consent of the parties as required by Rule 15 of the Federal Rules of Civil Procedure.  (Doc. 31.)  The court granted the motion to strike on October 18, 2011.

On October 19, 2011, the plaintiff filed a motion to amend the complaint in CV-11-RRA-02214-W and to "bifurcate and remand."  (Docs. 40, 41.)  Later, the plaintiff filed a supplemental motion to bifurcate and remand (doc. 42) and two supplemental motions to remand (docs. 44, 79). On October 20, 2011, the court granted the motion to amend, and on October 21, 2011 the plaintiff filed an amended complaint to add counts for negligence and/or reckless and/or wanton conduct against Thomasa Horton (Count Five), a respondeat superior claim against Averitt Express, Inc. ("Averitt") (Count Six), negligent hiring and/or supervision against Averitt (Count Seven), combining and concurrent negligence against Horton, Averitt, and Gallegos (Count Eight), negligent hiring and/or supervision against Superior (Count Nine), failure to provide a safe workplace against Mercedes Benz U.S. International, Inc. ("Mercedes") (Count Ten), and knowledge of  failure to provide safety

---

[3]All further document numbers, unless specifically noted, will reference documents in case CV-11-RRA-1721-W, which is the lead case.

devices against Mercedes and Superior (Count Eleven). (Doc. 37 in CV-11-RRA-02214-W.)

On September 12, 2012, this court recommended that the case be severed and that the tort claims be remanded.  The court noted that there was no objection from any party on this issue as none appeared in the *lead* case.  However, in the *member* case, MBUSI had filed an objection.  (Doc. 112 in CV-11-RRA-02214-W.)  The objection was filed only in response to the plaintiff's renewed (and last) motion to remand (doc. 79.)  MBUSI at no other time had filed anything as to this issue, and to the best of the court's recollection, had never before objected to the amended complaint.  Shortly after the court's recommendation was entered, counsel for MBUSI brought document 112 to the court's attention.  Accordingly the court withdrew document 82.


DISCUSSION

The amendment originally caused a shift in the diversity jurisdictional analysis. Now, with the addition of defendant Thomasa Horton, all of the parties except MBUSI agree that diversity jurisdiction is destroyed in CV-11-RRA-02214-W because the plaintiff and the new defendant, Horton, are both Alabama citizens. MBUSI does not argue that there is not complete diversity now.  Instead, it makes a two-fold argument.  First, it argues that it does not matter whether the parties *now* are diverse, only whether they were diverse at the time of removal. Second, the court should reconsider its decision to allow the amendment in the first place. If the court disallows the amendment, then it must consider whether the case should be remanded based upon the allegations in the original complaint.  Each issue will be addressed in turn.

6

### Whether the Court May Consider the Citizenship of a Party
### Added after the Case Was Removed

The plaintiff seeks remand pursuant to 28 U.S.C. § 1447(c), which states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  MBUSI argues that case law has held that the determination must be made at the time of removal only, and that a subsequent amendment should not be considered.  It cites the case of *Poore v. Am.-Amicable Life Ins. Co. of Texas*, 218 F.3d 1287, 1291 (11th Cir. 2000). However *Poore* does not deal with amendments that add parties.  That case dealt only with the amendment of a complaint, after removal, which lowered the amount in controversy to a figure below the required amount. That court specifically stated that "events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction." *Poore*, 218 F.3d at 1291.  The court therefore held that the plaintiff's amendment of the complaint to allege an amount in controversy that was below the threshold could not oust the court of jurisdiction once it attached.

*Poore* also discussed that, under the original version of 28 U.S.C. § 1447(c), it was clear that "[i]f the court did have jurisdiction at the time of removal, that jurisdiction was unaffected by subsequent acts, *such as loss of diversity* or loss of the required amount in controversy." *Id.* at 1289 (emphasis added).  However, *Poore* was discussing the situation of a later amendment establishing non-diversity of a party *already in the case*, as opposed to the case here, where a non-diverse party *was added after removal*.

Certainly a later amendment adding a non-diverse party can and *must* be considered

7

by the court in light of 28 U.S.C. § 1447(e) which reads: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).

<u>Whether the Amendment Should Have Been Allowed</u>

MBUSI then asks the court to reconsider its decision to allow the amendment.  The deadline to add parties in this case was October 3, 2011.  (Doc. 38, p. 2.)  On October 19, 2011, the plaintiff requested leave to modify the scheduling order and amend the complaint in the member case.  (Doc. 40.)  The amendment was allowed on October 20, 2011.  The court granted the motion without entering a briefing schedule.  Still, no party objected to the amendment until 7½ months later when MBUSI asked the court to reconsider that decision.

The first question which arises is whether this court can go back and reconsider that decision at this late stage.  In this district Judge Bowdre has addressed this very issue writing:

> Before considering how to proceed, the court must determine whether it can properly reconsider its decision to allow plaintiff's amended complaint adding Greene as a defendant. The authority of the court to reconsider its order allowing the addition of a jurisdiction—destroying defendant finds support in *Ingram,* 146 F.3d 858. In *Ingram,* the plaintiff, by motion for leave to amend, had amended her complaint to add a non-diverse defendant. *See* 146 F.3d at 861. The district court granted the motion for leave to amend with an order that improperly stated that the motion was granted "with the express understanding that the addition of a non-diverse defendant would not destroy the court's diversity jurisdiction which had already attached." 146 F.3d at 861. The plaintiff argued on appeal that under § 1447(e) the court had no alternative but to remand the case to state court. *See* 146 F.3d at 862. The Eleventh Circuit disagreed. While the Eleventh Circuit Court of Appeals held that "[t]he district court had no discretion to add the [non-diverse defendant], retain jurisdiction, and decide the case on the merits," the Eleventh Circuit also held that it had the authority, under Fed.R.Civ.P. 21, to dismiss dispensable, non-diverse parties to cure a defect in diversity jurisdiction. 146 F.3d at 862. The Eleventh Circuit analyzed the relevant

8

factors and dismissed the diversity-destroying party, retroactively restoring complete diversity and allowing the court to retain subject matter jurisdiction. 146 F.3d at 863. If the Eleventh Circuit can consider on appeal the propriety of an amendment under § 1447(e) and dismiss the added defendant, the trial court should likewise be able to reconsider its allowance of the non-diverse defendant by amendment.

*Smith v. White Consol. Indus., Inc*., 229 F. Supp. 2d 1275, 1278 (N.D. Ala. 2002).

Accordingly, it appears that the court can review its decision.

The standard for allowing an amendment which destroys diversity has been set out as follows:

[T]he decision to grant or deny a post-removal motion to amend a complaint which would destroy the subject matter jurisdiction of the federal court is discretionary. *See, e.g., Mayes v. Rapoport,* 198 F.3d 457, 462 (4th Cir.1999)("Under Section 1447(e), the actual decision on whether or not to permit joinder of a [non-diverse] defendant ... is committed to the sound discretion of the district court"); *Town of Gordon v. Great American Ins. Co.,* 331 F.Supp.2d 1357, 1359 (M.D.Ala.2004) (recognizing discretion in § 1447(e) context; *Carter v. Dover Corp., Rotary Lift Div.,* 753 F.Supp. 577, 579 (E.D.Pa.1991) ("Virtually every court to address the joinder question since the enactment of § 1447(e) views the statute as ... providing for a flexible, broad discretionary approach"). Such discretion does not imply that § 1447(e) amendments should be granted as a matter of course. To the contrary, "[t]he district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir.1987); see also *Dasma Investments, LLC v. Realty Associates Fund III, L.P.,* 459 F.Supp.2d 1294, 1299-1300 (S.D.Fla.2006) (explaining that a plaintiff "is not automatically entitled to add non-diverse defendants following removal to destroy diversity").

Before allowing a post-removal amendment which would destroy subject matter jurisdiction, a court must consider the following factors: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities. *Hensgens,* 833 F.2d at 1182; *accord: Jones v. Rent-A-Center East, Inc.,* 356 F.Supp.2d 1273, 1275 (M.D.Ala.2005); *Smith v. White Consol. Indus., Inc.,* 229 F.Supp.2d 1275, 1279-80 (N.D.Ala.2002); *Bevels v. American States Ins. Co.,* 100 F.Supp.2d 1309, 1313 (M.D.Ala.2000); *Jarriel v. General Motors Corp.,* 835 F.Supp. 639, 641 (N.D.Ga.1993). This framework is designed to facilitate the balancing of the defendant's interest in maintaining a federal forum with the competing interest disfavoring parallel lawsuits in federal and state courts. *Id.; see also Hughes v. Promark Lift,* Inc., 751 F.Supp. 985, 987 (S.D.Fla.1990) ("In determining whether joinder pursuant to § 1447(e) is appropriate, the district court is required to

balance the equities involved.").

*Holiday Isle, LLC v. Clarion Mortg. Capital, Inc.*, CIV.A. 07-00798-CG-C, 2008 WL 1756369 at *2 (S.D. Ala. Apr. 11, 2008).  The court must consider the *Hensgens* factors which all parties agree apply.


### The Extent to Which the Purpose of the Amendment Is to Defeat Federal Jurisdiction

The plaintiff states that its "inclusion of the Fictitious Parties 1-10 in the original complaint shows that the Plaintiff had a real intent to pursue all responsible parties," and that "[b]ecause the Plaintiff has shown this intent the entire time of the suit, the court cannot find that the plaintiff is seeking to amend the complaint with the purpose to defeat federal jurisdiction." (Doc. 114 in CV-11-RRA-02214-W, p. 6.) However, Judge Bowdre has noted:

> Several courts have held that the fact that a plaintiff attempted to add a non-diverse defendant only after the case was removed, even though he knew or should have ascertained the identity of the defendant at an earlier time, strongly indicates that the purpose of the plaintiff's amendment is to defeat federal jurisdiction. *See Sexton,* 51 F.Supp.2d at 1312; *see also, In re Norplant Contraceptive Products Liability Litigation,* 898 F.Supp. 429 (E.D.Tex.1995).

*Smith v. White Consol. Indus., Inc.*, 229 F. Supp. 2d 1275, 1280 (N.D. Ala. 2002). Similarly, in *D.N. ex rel. Epps v. Dreamland Amusements, Inc.*, CV 111-014, 2011 WL 2269411 at *2 (S.D. Ga. Apr. 20, 2011) *report and recommendation adopted*, CV 111-014, 2011 WL 2259768 (S.D. Ga. June 7, 2011) (the district court, quoting *Smith* noted that "a[]n attempt to add a non-diverse defendant following removal, coupled with circumstances under which the plaintiff knew or should have known the identity of the would-be defendant at an earlier time, 'strongly indicates that the purpose of the plaintiff's amendment is to defeat

federal jurisdiction.'")

Horton was not added until after the case was removed and then not until after this court recommended denial of the motion to remand and Judge Bowdre agreed. There can be no doubt that the plaintiff knew about Horton when the original complaint was filed as that document alleges that "Gallegos was traveling at an unreasonably high rate of speed and struck the vehicle in which Sergio Rivas was traveling from the rear causing Plaintiff's vehicle to strike a third vehicle, an eighteen-wheeler driven by Thomasa Horton and operated by Averitt Express." (Doc. 1-1, in CV-11-RRA-02214-W.) The plaintiff cites no new discovery or other circumstances to explain the delay in adding Horton.[4]

### *Whether the Plaintiff Has Been Dilatory in Asking for the Amendment*

Even though it knew about Horton before it filed the complaint, the estate waited over five months to do so, and then did so only after the district court would not remand the case.

---

[4]Judge Bowdre also noted in *Smith* that

[a]n additional factor in the analysis of whether a plaintiff's purpose in adding a non-diverse defendant is to defeat subject matter jurisdiction is a consideration of the relative merits or strength of the plaintiff's claim against the diversity destroying defendant. *See Goodman v. Travelers Ins. Co.,* 561 F.Supp. 1111, 1113 (N.D.Cal.1983) (holding that if the claim against the non-diverse defendant is relatively strong, joinder should be allowed). Conversely, if the claim against the non-diverse defendant is relatively weak or has no merit, that factor should be taken into account and would weigh against joinder.

*Smith*, 229 F. Supp. 2d at 1280.

The defendant argues that the case against Horton is weak. However, the court feels that this factor does not weigh in favor of disallowing the amendment in this case as it is not clear that the plaintiff can have *no* case against Horton.

11

This factor weighs in favor of disallowing the amendment.

*Whether the Plaintiff Will Be Significantly Affected If the Amendment Is Not Allowed*

The plaintiff's only argument regarding prejudice is that it "would be unable to hold all parties who contributed to [the] death responsible." (Doc. 114 in CV-11-RRA-02214-W, p. 6.)  There is no evidence to support that fact.  Indeed, the two-year statute of limitations would not run until February of 2013.  That leaves adequate time for the plaintiff to file against Horton in state court. Indeed, even if the statute had already run, the Eleventh Circuit has found that reason alone does not show prejudice.  *See Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862-63 (11th Cir. 1998).  Judge Bowdre, citing the *Ingram* case, noted in *Smith* that "the mere fact that the statute of limitations may now bar plaintiff's claim against Greene does not justify allowing the amendment. Further, plaintiff has not shown that he would be unable to fully recover against the remaining defendants without Greene's presence."  *Smith*, 229 F. Supp. 2d at 1282.  The same logic applies here.

*Other Factors Bearing on the Equities.*

Exactly what these "other factors" might be is not entirely clear. However, Judge Bowde has explained:

> several federal district courts in Alabama have addressed the joinder of non-diverse defendants in cases removed on diversity jurisdiction. One focus of recent opinions analyzing whether to allow joinder of a non-diverse party has been the interest of the diverse defendants in their choice of a federal forum. *See Sexton v. G & K Services, Inc.*, 51 F.Supp.2d 1311 (M.D. Ala.1999). As the United States District Court for the Middle District of Alabama stated, "[i]n balancing the equities, the parties do not start out on an equal footing. This is because of the diverse defendant's right to choose

12

between a state or federal forum. Giving diverse defendants the option of choosing the federal forum is the very purpose of the removal statutes." 51 F.Supp.2d at 1313 (citing *Hensgens*, 833 F.2d at 1181).

Diversity jurisdiction and the right of removal exist to give non-resident defendants the right to litigate in an unbiased form. Just as plaintiffs have the right to choose to sue in state court when complete diversity does not exist, non-resident defendants have the right to remove to and litigate in federal court when diversity of citizenship does exist.

*Smith v. White Consol. Indus., Inc.*, 229 F. Supp. 2d 1275, 1282 (N.D. Ala. 2002). Here, too, the court can see no reason not to allow the defendants their choice of forum.

All of these factors weigh in favor of disallowing the amendment.


## Whether the Case Should Be Remanded Now

Without an Amended Complaint the court is left with the original complaint. On July 19, 2011, the court recommended that the motion to remand be denied. The new motions to remand change little. Documents 44 and 79 address the citizenship of Horton only and are therefore due to be denied. Documents 41 and 42 deal with Gallegos's citizenship but still add very little. As noted by this court on October 20, 2011, document 41

discusses Gallegos's "residence" it does not discuss her "domicile" which is the means by which this court must determine her citizenship. In that respect, the motion sheds no further light on the issues addressed by this court's Report and Recommendation and Judge Bowdre's order. Further, it is inappropriate to reconsider Gallegos's current domicile, as jurisdiction must be determined at the time of removal. Lastly, as discussed in this court's previous order, the movant's argument that Gallegos was not a party to the removal is without merit.

(Order of 10/20/11.) Apparently having learned its lesson, the estate changes the wording used in document 42 by stating:

Plaintiff's Counsel while inspecting the Gallegos vehicle prior to litigation talked with Kathy Gallegos' son who stated that Defendant Gallegos was domiciled in the State

13

of Alabama with him at 733 County Road 842, Cullman, AL 35057 leading up to and inclusive of the date of the accident made the basis of this claim. . . . It is further believed that Defendant Gallegos is a resident of the State of Alabama domiciled in a medical inpatient facility within the State, though her current whereabouts are unknown. Defendants Counsel stated that, "It is my understanding that Kathy Gallegos may now be residing in an inpatient facility in Alabama, but I am not certain." . . . All relevant facts indicate that defendant Gallegos was domiciled in Alabama at the time of the accident. She was residing with her son in Cullman County, and there is no indication that ever had intent to leave the state. Based on information and belief Defendant Gallegos still resides in the state further indicating that Defendant Gallegos had no intention at the time of the accident of residing anywhere other than Alabama. Defendant Gallegos was domiciled in Alabama at the time of the collision.

(Doc. 38, p. 2.)

In *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1225-27

(M.D. Ala. 2003) the Middle District summarized the rules as follows:

> When a court is reviewing the citizenship of the parties to determine if the suit meets the requirements of diversity jurisdiction, the court must look to the citizenship of the parties at the time the action was filed and at the time of removal. *See, e.g., Stevens v. Nichols,* 130 U.S. 230, 231, 9 S.Ct. 518, 32 L.Ed. 914 (1889); *Roecker v. U.S.,* 379 F.2d 400, 407 (5th Cir.), *cert. denied,* 389 U.S. 1005, 88 S.Ct. 563, 19 L.Ed.2d 600 (1967)[5]; *Brown v. TranSouth Finan. Corp.,* 897 F.Supp. 1398, 1402 (M.D.Ala.1995); *Goff v. Michelin Tire Corp.,* 837 F.Supp. 1143, 1144 (M.D.Ala.1993).

> For purposes of diversity jurisdiction, "citizenship" means "domicile." *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir.1954). In fact, it is a party's domicile rather than his residence which is determinative of citizenship for diversity jurisdiction. *Jagiella v. Jagiella,* 647 F.2d 561, 563 (5th Cir.1981); *Combee v. Shell Oil Co.,* 615 F.2d 698, 700 (5th Cir.1980); *Rayfield,* 878 F.Supp. at p. 207. "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom...." *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.) *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974) (internal quotations omitted); *Spann v. Northwestern Mut. Life Ins. Co.,* 795 F.Supp. 386, 390 (M.D.Ala.1992).

> Courts have acknowledged the usefulness of certain presumptions with respect to a person's domicile. *See Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 352, 22 L.Ed. 584 (1874) (listing useful presumptions); *McDonald v. Equitable Life Ins. Co. of Iowa,* 13 F.Supp.2d 1279, 1281 (M.D.Ala.1998) ("In determining domicile, a court should consider both positive evidence and presumptions."). First among these presumptions is "that the state in which a person resides at any given time is also that

person's domicile." *McDonald*, 13 F.Supp.2d at 1281 (citing *District of Columbia v. Murphy*, 314 U.S. 441, 455, 62 S.Ct. 303, 86 L.Ed. 329 (1941), and *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954)). Second, "once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state." *McDonald*, 13 F.Supp.2d at 1281 (citing *McDougald v. Jenson*, 786 F.2d 1465, 1483 (11th Cir.1986)). Another important presumption is that of

> favoring an established domicile as against an allegedly newly acquired one. The effect of this presumption is to put a heavier burden on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one.

*Brown*, 897 F.Supp. at 1402 (internal quotations omitted).

> Once a person establishes a domicile, it *continues* until the person establishes a *new* domicile. *Id.* (emphasis added). In this circuit, it is elementary that, to effect a change of one's legal domicile, *two* things are indispensable: First, *residence in the new locality;* and second, the *intention to remain there*. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient. *Welsh v. Am. Sur. Co. of New York,* 186 F.2d 16, 17 (5th Cir.1951) (emphasis added). *Accord, McCormick,* 293 F.3d at 1258 (quoting *Mas,* 489 F.2d at 1399).

> Courts examine numerous specific objective facts to determine whether a domicile has been established; these facts include:

> location of employment; home ownership and ownership of other real property; location of one's household furnishings; registration and title to one's automobiles; driver's licensing; voter registration; payment for utilities; banking; acquiring a telephone number and listing it; receiving mail; and establishing membership in local professional, civic, religious, or social organizations.

*Rayfield,* 878 F.Supp. at 206 (citing *Simmons v. Skyway of Ocala,* 592 F.Supp. 356, 359 (S.D.Ga.1984)). However, no single factor is conclusive; instead, a "totality of evidence" approach is necessary. *McDonald,* 13 F.Supp.2d at 1281; *Nat'l Artists Mgmt. Co. v. Weaving,* 769 F.Supp. 1224, 1228 (S.D.N.Y.1991).

*Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1225-27 (M.D. Ala. 2003).

The plaintiff's invoking the word "domicile" does not mean that the Gallegos were in fact domiciled in Alabama.  Also, where she was domiciled at the time of the accident, or

where she is domiciled now, is of no consequence.  It is her domicile at the time of removal which matters.  Also, the court will not hold  that Gallegos changed her domicile based only upon statements such as "upon information and belief."  The plaintiff admits that Gallegos's present whereabouts are unknown.

The evidence presented by the defendants is exactly the type of evidence mentioned in the *Audi* case. It establishes that at one time Gallegos established a domicile in Louisiana. The fact that she may have lived with her son for a while at the time of the accident, and then *may* still be living in Alabama,  does not satisfy the heavy burden on the estate to show that her domicile changed thereafter.   Accordingly, the court determines that Gallegos was domiciled in, and therefore a citizen of, Louisiana at the time of removal.  Complete diversity therefore exists and there is subject matter jurisdiction in this court.

## ORDER and RECOMMENDATION

For the reasons stated herein, and upon reconsideration, the Motion to Amend (doc. 35 in CV11-RRA-2214-NE) is DENIED to the extent that it adds Horton as a defendant. The Amended Complaint (doc. 37 in  CV11-RRA-2214-NE) is STRICKEN to that extent. Further, it is RECOMMENDED that the motions to remand be DENIED.

Any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically

16

identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.  If objections are filed, the opposing party has ten (10) additional days to file a response to the objections.

Done this 7th day of December, 2012.

Robert R. Armstrong, Jr.
United States Magistrate Judge